IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RACHEL B. THORSON,                    §
                                      §
                    Plaintiff,        §
                                      §  Civil Action No. 3:15-CV-0571-D
VS.                                   §
                                      §  *This memorandum opinion and order was filed under
AVIALL SERVICES, INC., et al.,        §   seal on January 6, 2017.  The court has granted the
                                      §   parties' joint request that this redacted version be
                    Defendants.       §    publicly filed.

MEMORANDUM OPINION
AND ORDER

        In this action arising from defendants' alleged breach of a severance agreement, the

court must decide whether ERISA[1] completely preempts plaintiff's state-law breach of

contract claim.  Concluding that it does not, but that plaintiff's complaint is deficient in other

respects, the court grants in part and denies in part defendant Aviall Services, Inc.'s

("Aviall's") Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim.

I

        Don Thorson ("Don"), an employee of defendant Aviall was laid off in August 2012

as part of a corporate restructuring.[2]  Don died after filing this lawsuit, and Rachel B.

_____

        [1]The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

        [2]In deciding Aviall's Rule 12(b)(6) motion, the court construes the complaint in the
light most favorable to plaintiff, accepts as true all well-pleaded factual allegations, and
draws all reasonable inferences in her favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d
433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the
complaint, any documents attached to the complaint, and any documents attached to the
motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star
Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Thorson ("Rachel"), his mother, was substituted as the plaintiff under Rule 25(a)(1).

Don and Aviall entered into a written "Severance Agreement and Release" ("Agreement") under which Don was to continue to receive his base salary as severance pay until March 19, 2013. The Agreement incorporated the definitions from the Aviall, Inc., Severance Pay Plan for Exempt Employees ("Severance Plan"), and stated that it was an agreement "for the benefits payable to [Don] from the [Severance Plan]." Compl. Ex. A at 1. Regarding medical, dental, and vision benefits, the Agreement provided:



Compl. Ex. A at 1, ¶ 2.

The complaint alleges that, although Don believed his medical benefits were to continue until March 19, 2013, he later learned that Aviall had terminated these benefits in November 2012. On February 27, 2013 Don wrote a letter to Aviall's Vice President of

Human Resources demanding that his health insurance be reinstated. After receiving Don's letter, Aviall agreed to reinstate Don's insurance for an additional four months, which would have continued Don's insurance coverage through July 2013. Aviall only extended the reinstated coverage, however, through March 31, 2013.

On March 19, 2013 Aviall sent Don a "2013 COBRA Benefit Election Form" by email and stated that, once it received the completed form, it would contact defendant Conexis Benefits Administrators, L.P. ("Conexis"), which served as Aviall's COBRA administration partner, and Conexis would generate a COBRA election form for Don to complete. Don signed and returned the form to Aviall. Plaintiff alleges that Don never received any additional COBRA forms from Aviall or Conexis.

On July 11, 2013 Don's wife Marieva was diagnosed with stage 4 colon cancer. Don learned on that same date that Aviall had terminated his family coverage on March 31, 2013, instead of extending it as agreed to make up for the periods prior to March 31, 2013 when Don was allegedly entitled to coverage but had none. Marieva died in August 2014.

Don brought the instant lawsuit against defendants Aviall and Conexis, alleging that Aviall breached the Agreement by failing to provide him the health care coverage specified therein from November 2012 until the first or second week of March 2013. He also alleged that Aviall and Conexis breached the parties' subsequent contract to reinstate and extend his healthcare coverage from March 19, 2013 through July 2013 to make up for the lapsed period. Don also brought a claim under ERISA, alleging that defendants failed to give him timely, proper notice of his right to extend health care coverage after March 19, 2013, and

that defendants failed to act upon his election to secure such coverage.

Aviall moved to dismiss Don's complaint, contending that his breach of contract claim is completely preempted by ERISA, that certain of the damages he seeks in connection with his contract claim are unavailable under ERISA, and that he failed to plausibly allege an ERISA claim. Shortly after Aviall filed the motion, Don died. The court statistically terminated the motion to dismiss so that a Rule 25(a)(1) motion to substitute could be filed. The court later granted Rachel's motion to be substituted as plaintiff in her capacity as Independent Administrator of Don's estate, and it reactivated Aviall's motion to dismiss. The motion has been briefed and is ripe for decision.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive defendant's motion to dismiss, plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be

- 4 -

enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III

Aviall maintains that the Agreement and the Severance Plan are governed by ERISA and that, accordingly, plaintiff's state-law breach of contract claim is completely preempted. To decide whether the state-law breach of contract claim is preempted, the court must first determine whether the Agreement or the Severance Plan—or both, as Aviall maintains—is an ERISA employee welfare benefit plan.  *See, e.g., Meyers v. Tex. Health Res.*, 2009 WL 3756323, at *3 (N.D. Tex. Nov. 9, 2009) (Fitzwater, C.J.).  In doing so, the court follows a "three-factor test," asking whether "(1) the plan exists; (2) the plan falls within the safe-harbor provision established by the Department of Labor; and (3) the employer established or maintained the plan with the intent to benefit employees."  *Peace v. Am. Gen.*

*Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006).[3]  Whether a plan exists is a "fact-specific"

inquiry.  *Cantrell v. Briggs & Veselka Co.*, 728 F.3d 444, 449 (5th Cir. 2013).

In its seminal decision setting out the requirements for the existence of an ERISA

plan, the Supreme Court held in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), that

to constitute an ERISA plan, a program must necessitate the existence of "an ongoing

administrative program to meet the employer's obligation."  *Id.* at 11; *see also Gomez v.*

*Ericsson, Inc.*, 828 F.3d 367, 371-72 (5th Cir. 2016) ("It is thus the existence or nonexistence

of an 'ongoing administrative program' that is the key determinant of whether severance

plans are governed by ERISA." (citations omitted)).  In contrast, a program will not be an

ERISA plan where it involves a "one-time, lump-sum payment triggered by a single event

[that] requires no administrative scheme whatsoever."  *Fort Halifax*, 482 U.S. at 12.

"[D]etermining the eligibility of claimants, calculating benefit levels, making disbursements,

monitoring the availability of funds for benefit payments, and keeping appropriate records

in order to comply with applicable reporting requirements" are all evidence of an

administrative scheme.  *Id.* at 9.  As the Fifth Circuit has explained:

> [e]ven for plans that result in only a lump-sum payment, that
> administrative scheme can be found in a number of other
> features *that require discretion*: the eligibility determination;
> calculations of the payment amount (such as deductions and
> detailed formulas); the provision of additional services beyond
> the severance payment (such as insurance); and the
> establishment of procedures for handling claims and appeals.

---

[3]The parties do not dispute that the second and third factors are satisfied.

*Gomez*, 828 F.3d at 372 (emphasis added) (citing cases).

## IV

It is undisputed that the Severance Plan constitutes an ERISA plan.  Aviall adopted the Severance Plan in 1998[4] ██████████████████████████████████  D. App. 57.[5]  Although the court cannot determine from the Severance Plan documents how many Aviall employees are covered, it is clear that the Severance Plan is ongoing and covers multiple employees.  *See Gomez*, 828 F.3d at 372 (concluding plan was an ERISA plan where, *inter alia*, "[t]he Plans [were] ongoing on a large scale.").  Moreover, although an entitlement to benefits under the Severance Plan is triggered by a single event (an employee's termination), "that event would occur more than once, at a different time for each employee." *Tinoco v. Marine Chartering Co.*, 311 F.3d 617, 621 (5th Cir. 2002) (citation omitted).  Thus even if only a small percentage of covered employees qualified for severance at some point in their careers, this would still result in numerous different events that the Severance Plan would have to administer, including the calculation of benefits for each eligible employee. *See Gomez*, 828 F.3d at 372.[6]

---

[4]Aviall subsequently amended the Severance Plan in 2005 and again in 2008.

[5]The term "Eligible Employee" is broadly defined to include Aviall's ██████████ ████████████████████████████████████████████████████████████████████████ D. App. 60.

[6]For example, although the amount of severance pay will only have to be calculated one time for each eligible employee, "Severance Pay" is to be calculated using the employee's base pay, multiplied by a certain set number of weeks, which varies according to the employee's job classification and whether the termination of employment occurs prior

The Severance Plan also requires the administrator to exercise a great deal of discretion.  The Severance Plan provides that ████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ D. App. 63. But not every termination of employment results in the payment of severance pay.  The Severance Plan defines "Termination of Employment" to mean ████████████████ ████████████████████████████████████████ ██████████████████████████ D. App. 62 (emphasis added), and defines "Cause" to include eight different reasons for discharge.[7]  Further, the

_____

to a change of control or whether the termination of employment occurs on or within one year after a change of control.  This calculation will be different for each eligible employee under the Severance Plan.

[7]The Severance Plan defines "Cause" to mean:



Severance Plan states that the Employee Benefits Plan Committee of Boeing ("Committee"), which is designated as its administrator, " ███████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████ *Id.* at 62 (emphasis added). Accordingly, similar to other plans held to be covered under ERISA, the Severance Plan requires its administrator to determine in its sole discretion whether an employee's termination was for "cause." *See, e.g., Gomez*, 828 F.3d at 372 (holding that plan was ERISA plan where Administrator had "to exercise a great deal of discretion," which included "determin[ing] whether a 'good reason' exist[ed] that qualifi[ed] an employee's voluntary termination"); *Clayton v. ConocoPhillips Co.*, 722 F.3d 279, 296 (5th Cir. 2013) (holding that defendant "show[ed] that 'an ongoing administrative program' [was] necessary because of the instant Trustee's claims eligibility discretion."(citation omitted)).

---



D. App. 60.

The Committee, as Severance Plan administrator, also has ███████████████

███████████████████████████████████████████████████

███████████████ D. App. 64.  These powers include "███████████████

███████████████████████████████████████████████████

███████████████ *Id.*  In addition,



*Id.* ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████. All of these responsibilities indicate an ongoing administrative scheme.

Accordingly, the court holds that the Severance Plan is an ERISA employee welfare plan.

V

Having determined that the Severance Plan is governed by ERISA, the court next

considers whether, as Aviall contends, the *Agreement* is an ERISA plan or is instead merely

an employment contract governed by state law.

A

Aviall contends that the Agreement is an ERISA plan because it sets forth the descriptions of benefits, the classes of beneficiaries (i.e., Don and his eligible dependents), the sources of financing (i.e., Don and Aviall), and the procedures for receiving benefits. It next maintains that the terms of the Agreement were clearly taken from one of the six templates attached to the 2005 Severance Plan document with Aviall's using the template applicable to an employee who was over 40 years old and not subject to a non-compete agreement, and that the Agreement and Severance Plan must thus be read together. Finally, Aviall lists the various administrative responsibilities that the Agreement imposes on Aviall and contends that these administrative responsibilities far exceed the one-time lump-sum severance payment at issue in *Fort Halifax* and demonstrate sufficient administrative activity for ERISA to apply.

Plaintiff responds that the Agreement, which requires Aviall to calculate and pay the same portion of Don's COBRA premium that it paid for similarly situated employees, does not involve the need for an administrative scheme; that no discretionary decisions are needed to pay a pre-calculated amount toward Don's COBRA premiums, so no administration is required; that the facts in this case show that there was *no* administration of the plan, as evidenced by the fact that "the carrier shows Plaintiff was covered throughout the severance period, so premiums must have been paid, and the denial of benefits to plaintiff and his family was completely unjustified," P. Br. at 11; and that the Agreement's statement that it is to be governed and construed by Texas State Law is inconsistent with ERISA preemption.

- 11 -

Aviall replies, *inter alia*, that parties to a severance agreement cannot choose state law to preempt the applicability of ERISA, and that considering ERISA's preemptive sweep, Don and Aviall could not have agreed that state law, rather than ERISA, governed the Agreement.

B

Aviall contends that, because the Agreement uses the terms from the Severance Plan, is in consideration of the benefits payable under the Severance Plan, and is taken from one of the six templates attached to the 2005 Severance Plan document, the Agreement and the Severance Plan must be read together, and they establish that Aviall maintained an ERISA plan. In support of this position, Aviall relies on *Hernandez v. Alcatel USA Resources, Inc.*, 560 F.Supp.2d 528 (E.D. Tex. 2006), in which the court held that a severance agreement that referenced a summary that, in turn, referenced a severance plan was part of an ERISA plan. The *Hernandez* court rejected the plaintiff's argument that a Conditional Severance Agreement and General Release were not governed by ERISA and that the plaintiff's claim was for a simple breach of that agreement. It held:

> The Confidential Severance Agreement and General Release specifically references Exhibit A, the Summary of the Benefits under the Alcatel USA, Inc. Severance Benefits Plan. The Summary, in turn, references Alcatel's Severance Plan. Hence, Hernandez's arguments that the Confidential Severance Agreement and General Release exists separate and apart from Alcatel's Severance Plan lack merit.

*Id.* at 535.

The severance agreement in *Hernandez* specifically referenced the plan summary, stating:

- 12 -

> [w]ithin ten (10) business days following the [End of
> Notification] Date, Alcatel shall provide to Employee the
> Severance Pay set forth in the attached Exhibit A in accordance
> with the terms and conditions set forth in Exhibit A.

*Id.* at 531. Exhibit A, the "Summary of the Benefits under the Alcatel USA, Inc. Severance

Benefits Plan," explained that it presented a summary of benefits provided under the

severance plan and that "[a]ny questions, interpretations, or appeals are governed by the plan

documents and shall be resolved by the Plan Administrator and Administration Committee."

*Id.* at 532; *see also Gomez v. Ericsson, Inc.*, 2014 WL 243698, at *2 (E.D. Tex. Jan. 22,

2014) ("The Severance Agreement between Gomez and Ericsson incorporates by reference

the terms of the Standard Plan and the Top Contributor Plan, providing that severance

payment will be made according to these plan terms.  Thus, to determine whether the

Severance Agreement falls within ERISA, this Court examines the terms and administrative

schemes, if any, of the two severance plans."), *aff'd*, 828 F.3d 367 (5th Cir. 2016).

Unlike the severance agreements in *Hernandez* and *Gomez*, the Agreement at issue

here only incorporates the Severance Plan's *definitions*.  *See* Compl. Ex. A at 1 (███████

███████████████████████████████████████████████████████████████████

███████████████████████).  It provides for the payment of Don's "Base Pay," (defined

in the Severance Plan ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████)

in bi-weekly installments for a period of 31 weeks, beginning on the day following Don's

"Last Day Worked," and ending on March 19, 2013.  Calculation of Don's severance pay can

be made without reference to the Severance Plan, other than for certain defined terms.  The

Agreement also provides for the payment of COBRA premiums and other benefits and sets

out various obligations on the part of Don and Aviall, none of which is also provided in the

Severance Plan.[8]  Moreover, the Agreement states that it "█████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████  Compl. Ex.

A at 4, ¶ 23,[9] and that it "████████████████████████████████████████████████████

██████████████  *id.* at 2, ¶ 10.  It neither incorporates nor specifically refers to the Severance

---

[8]The Agreement states that Aviall's "█████████████████████████████████████
███████████████████  Compl. Ex. A at 1, ¶ 2.  Aviall does not contend that the
Agreement is an ERISA plan by virtue of its incorporation of the "health care program,"
which the court assumes is the "Aviall, Inc. Health and Welfare Plan," ("Health Plan") that
Aviall refers to in the factual background section of its motion.

[9]In this same section, the Agreement also states:



Compl. Ex. A at 4, ¶ 23.

Plan, other than for the application of certain definitions.  The court therefore concludes that the Agreement exists separate and apart from the Severance Plan. *See, e.g., Evans v. Infirmary Health Servs., Inc.*, 634 F.Supp.2d 1276, 1288-89 (S.D. Ala. 2009) (concluding that plaintiff's suit to recover benefits under severance agreement was not preempted by ERISA, even though company's leadership severance policy was ERISA plan, where plaintiff sought to enforce rights under the severance agreement and "her allegations do not in any way involve clarification or enforcement of her rights *under the terms of* the Policy." (bold font omitted)).

C

The court next concludes, as a matter of law,[10] that the Agreement, standing alone, is not an ERISA plan.

1

The question whether the Agreement is an ERISA employee welfare benefit plan is a mixed question of fact and law.  "[T]he existence of an ERISA plan within the statutory definition is a question of fact.  However, where the factual circumstances are established as a matter of law or undisputed, [the court has] treated the question as one of law[.]"  *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007) (citations omitted).  "It is clear that, while not so stating, [the Fifth Circuit has] followed [its] sister circuits in treating the

---

[10]In reaching this conclusion, the court has determined that there are no disputed fact issues regarding the terms of the Agreement or the obligations that the Agreement imposes on Aviall.

existence of an ERISA plan as a mixed question of fact and law." *Id.* at 449. "If there is no genuine issue regarding a fact that is pertinent to th[e] inquiry [whether a plan is an ERISA plan], the court decides [the question] as a matter of law [.]" *Henderson v. Paul Revere Life Ins. Co.*, 2013 WL 1875151, at \*4 (N.D. Tex. Apr. 19, 2013) (Fitzwater, C.J.).[11] "If there is a genuine issue of fact, however, the trier of fact must resolve the issue before the court can determine based on the facts so found, and as a matter of law, whether the policy is part of an ERISA plan." *Id.*

Since *Fort Halifax* was decided, courts have recognized that, to be an ERISA plan, a program must require that an employer do more than make a one-time lump-sum payment on the occurrence of a single contingency. "But courts have sometimes encountered difficulties determining whether a particular program constitutes an 'ongoing administrative program,' within the meaning of *Fort Halifax*." *Kirkindoll v. Nat'l Credit Union Admin. Bd.*, 2013 WL 6164093, at \*4 (N.D. Tex. Nov. 20, 2013) (Fitzwater, C.J.). "Because the question '[w]hether a plan exists is fact-specific,' courts have engaged in a process of comparing and contrasting the program in question with the factors on which other courts have relied when deciding that a particular program did or did not qualify as an ERISA plan." *Id.* (alteration in original) (quoting *Cantrell*, 728 F.3d at 449). The court will follow this approach in the instant case. *Id.*

ERISA is concerned with "benefit plans" rather than simply with "benefits," because

---

[11]Westlaw reflects that the date of this memorandum opinion and order is May 6, 2013. That is the date the opinion was unsealed. The date it was filed is April 19, 2013.

"[o]nly 'plans' involve administrative activity potentially subject to employer abuse." *Fort Halifax*, 482 U.S. at 16.  The Court in *Fort Halifax* held that a lump sum severance payment, triggered by a single event that may never occur, is not a "plan" for purposes of ERISA:

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation.  The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control.  Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize.  The employer may well *never* have to pay the severance benefits.  To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes.  To do little more than write a check hardly constitutes the operation of a benefit plan.  Once this single event is over, the employer has no further responsibility.  The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

*Id.* at 12.  The benefits at issue in *Fort Halifax* were to be provided by the employer pursuant to a state statute that required that "any employer that terminates operations at a plant with 100 or more employees, or relocates those operations more than 100 miles away, must provide one week's pay for each year of employment to all employees who have worked in the plant at least three years."  *Id.* at 5.  The Supreme Court held that the statute was not preempted by ERISA "because the statute neither establishes, nor requires an employer to maintain, an employee welfare benefit 'plan'" within the meaning of the ERISA statute.  *Id.* at 6.

 Courts in the Fifth Circuit have followed *Fort Halifax* in holding that, where plans

require a one-time, lump-sum payment triggered by a single specific event, the plans do not require an administrative scheme to meet the employer's obligation and are therefore not ERISA plans. *See, e.g., Fontenot v. NL Indus., Inc.*, 953 F.2d 960, 962-63 (5th Cir. 1992) (holding "golden parachute" plan that required one-time lump sum payment required no administrative scheme and was not ERISA plan because employees would receive benefits upon termination regardless of reason for termination and the "theoretical possibility of a one-time obligation in the future created no need for an on-going administrative program to process claims and pay benefits."); *Wells v. Gen. Motors Corp.*, 881 F.2d 166, 176 (5th Cir. 1989) (holding that where employees could elect to receive one-time lump sum payment if they ceased working at employer's plant, plan was not an "employee benefit plan" for purposes of ERISA because it was not ongoing, and although employees could elect two-year installment payment option, there was no need for continuing administration of the payment program); *Tinoco*, 311 F.3d at 622 (holding that plan that offered plaintiffs choice of lump-sum payment or stream of payments until they reached age 62 was not ERISA plan because, regardless of how they chose to receive payment, the total amount to be paid was based on one-time calculation using fixed formula, and plaintiffs produced no evidence that plan required an administrative scheme to make ongoing discretionary decisions based on subjective criteria); *see also Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992) (following *Fontenot*, identifying "the fence between cases involving real ERISA plans and cases such as *Fort Halifax*" as "whether the plan in question requires an administrative scheme because the circumstances of each employee's termination have to be analyzed in

light of certain criteria," and concluding that even though program was triggered by single

event, this event would occur more than once, at different time for each employee, and

"[t]here was no way to carry out that obligation with the unthinking, one-time,

nondiscretionary application of the plan administrators in *Fort Halifax* and *Wells*." (brackets

and internal quotation marks omitted).

In contrast, where benefits plans require managerial discretion, require the employer

to analyze the circumstances of each employee's termination separately in light of certain

criteria, *see Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72, 76 (2d Cir. 1996),

or involve more than just the one-time payment of severance benefits, courts have held that

they are covered by ERISA.  For example, in *Suda v. BP Corp. North America, Inc.*, 2006

WL 1049224, at *1 (5th Cir. Apr. 19, 2006) (per curiam) (unpublished opinion), the panel

contrasted the plan at issue with the plans in *Fontenot* and *Fort Halifax*.  It noted that

> the BP Plan, although establishing a seemingly simple formula
> for determining the severance allowance for which a terminated
> BP employee was eligible, made that allowance subject to a
> variety of deductions that complicated the calculation of the
> severance allowance.  It also provided non-trivial criteria for
> determining employee eligibility.  Moreover, the BP Plan
> Administrator had wide discretion and the Plan provided for a
> two-level administrative claims procedure.  Furthermore, the BP
> Plan provided more than a one-time severance payment, it
> provided ongoing health and life insurance, relocation, and
> educational aid.  BP had to do more than "write a check."  All
> of this required an "ongoing administrative scheme," albeit a
> modest one.

*Id.* (citations omitted); *see also Crowell v. Shell Oil Co.*, 541 F.3d 295, 305-07 (5th Cir.

2008) (concluding that letters of agreement that provided for payments to employees when

- 19 -

employer changed control were ERISA plans because payment was embedded within letter that included a more comprehensive plan; amount of the monthly pensions and one-time payment relied directly on calculations made in predecessor company's employee benefits plans; provision for one-time cash payment contained explicit language about "administrative procedures" required for calculation; and letters of agreement, including portions referring to one-time cash payment upon change of control, required ongoing administrative involvement).

Recently, the Fifth Circuit held in *Gomez* that the employers' plans, which required "abundant" administrative activity, constituted ERISA plans. *Gomez*, 828 F.3d at 372. The plans covered over 10,000 employees across the nation, which "means they are a far cry from 'single event' plans." *Id.* (citation omitted). In addition, the plans required the administrator to exercise "a great deal of discretion," including determining whether a "good reason" existed that qualified an employee's voluntary termination; calculating offsets and deductions; and monitoring payment obligations in the event an employee returned to work during the severance period since the plans contemplated setoff of severance amounts received against that future pay. *Id.* The court then noted: "[f]inally, the Standard Plan provides for COBRA insurance coverage, which alone gives rise to a host of issues concerning eligibility, length of coverage, cost, and whether the coverage terminates because the employee acquires new insurance during the eligibility period 'or otherwise become[s] ineligible.'" *Id.* at 373 (citation omitted). The court thus concluded that because the employer's "Plans check off most of the factors indicative of ERISA plans[,] . . . [t]hey . .

- 20 -

. are governed by the federal statute." *Id.*

2

Against this backdrop, the court holds that the Agreement is not an ERISA employee benefit plan, but is, instead, an employment contract arrangement governed by state law.

The Agreement requires Aviall to continue to pay Don's current base pay (as defined by the Severance Plan) as severance pay in bi-weekly installments for 31 weeks. It applies to a single employee (Don), and payment is triggered by a single event (Don's termination). Although the amount due under the Agreement must be calculated, including amounts to be withheld for taxes and ████████████████ Compl. Ex. A. at 2, ¶ 11, this is a one-time calculation. Like the arrangement in *Tinoco*, the amount Aviall agreed to pay as severance pay is "based on a one-time calculation using a fixed formula," and writing a check every other week for a fixed period of time "is hardly an administrative scheme." *Tinoco*, 311 F.3d at 622-23. In other words, "the pre-determined benefit, even when paid over time, [does] not amount to an administrative scheme." *Peace*, 462 F.3d at 441.

Nor does the requirement that Aviall calculate and pay, for a period of time, a portion of Don's COBRA premiums (contingent upon Don's electing such coverage and paying his share, if any, of premiums) necessitate an ongoing administrative scheme. Like the payment of severance benefits, the payment of COBRA premiums requires a one-time calculation and thereafter requires Aviall to do little more than write a check. The minimal amount of monitoring potentially required of Aviall to determine whether its obligation to pay a portion

of Don's COBRA premiums has terminated[12] does not involve the exercise of discretion and does not otherwise require an ongoing administrative scheme.

The Agreement also does not require a plan administrator to make discretionary decisions, such as deciding whether an employment offer is for "'substantially equivalent' employment," *Bogue*, 976 F.2d at 1321, or whether a "good reason" exists that qualifies an employee's voluntary termination, *Gomez*, 828 F.3d at 372. Nor does it explicitly authorize Aviall to make such discretionary decisions, reference any administrative procedures that must be followed, or provide any review procedures. *Cf. Bogue*, 976 F.2d at 1323; *Kirkindoll*, 2013 WL 6164093, at *10.[13]

---

[12]The Agreement provides:



Compl. Ex. A at 1, ¶ 2.

[13]The court disagrees that the Agreement's requirements that Aviall

To the extent the Agreement requires Aviall to provide its "health care program benefits" in accordance with COBRA and the terms of Aviall's health care program, the court concludes that no administrative scheme is required. Although some courts have suggested that COBRA continuation coverage "places ongoing administrative burdens on the employer," *Eberlein v. Provident Life & Accident Insurance Co.*, 2008 WL 791944, at \*4 (D. Colo. 2008) (citing *Demars v. CIGNA Corp.*, 173 F.3d 443, 447 (1st Cir. 1999)); *see also Mimbs v. Commercial Life Insurance Co.*, 818 F. Supp. 1556, 1560-1561 (S.D. Ga. 1993), the court concludes that here, where all of the other hallmarks of an ERISA plan are lacking, the provision of COBRA continuation coverage does not convert the Agreement into an ERISA plan. *Cf. Gomez*, 828 F.3d at 373 (noting that when employer provides COBRA insurance coverage, this "alone gives rise to a host of issues concerning eligibility, length of coverage, cost, and whether the coverage terminates because the employee acquires new insurance during the eligibility period 'or otherwise become[s] ineligible,'" and concluding that employer's plans "check off most of the factors indicative of ERISA plans."). This is because the limited continued health care coverage requires no additional, unique

---

t█████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████ necessitate an ongoing administrative scheme. Because these obligations are contingent on an event that may never materialize (and, in fact, there is no suggestion in the record that Aviall ever had to perform any of these obligations), there is no need for an ongoing administrative program to perform these tasks. *See, e.g., Peace*, 462 F.3d at 441 ("We have concluded that a one-time lump sum payment, *contingent upon an event that may never materialize*, 'create[s] no need for an on-going administrative program to process claims and pay benefits' and therefore is not a plan." (emphasis added) (quoting *Fontenot*, 953 F.2d at 961)).

administrative scheme other than what was already in place for processing health care claims and courts, including in this circuit, "have found that such continued coverage does not constitute an employee benefit plan so long as it does not require the creation of a new administrative scheme or does not materially alter an existing administrative scheme." *Nelson v. Gen. Motors Corp.*, 156 F.3d 1231, 1998 WL 415993, at *4 (6th Cir. 1998) (unpublished table opinion); *see also, e.g., Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1539 (3d Cir. 1992) (holding that where plan provided for "continuation of certain benefits" that would be administered under pre-existing administrative scheme "like the one-time severance payment, [the continuation of existing benefits] would not require the creation of a new administrative scheme" and thus did not "invoke[] the application of ERISA under the *Fort Halifax* test."); *Fontenot*, 953 F.2d at 961-63 (holding "golden parachute" program providing, *inter alia*, for a three-year continuation of certain benefits to eligible executives was not ERISA plan because employer was not required to establish separate and ongoing administrative scheme to make payments and provide benefits under program); *Willis Re Inc. v. Hearn*, 2016 WL 4149995, at *7 (E.D. Pa. Aug. 3, 2016) ("[A] one-time lump-sum payment which does not create a new administrative scheme or impose new administrative requirements but requires continuation of an existing procedure is not an ERISA pension plan.").

In sum, because the Agreement (1) requires the payment of a set amount (Don's base pay, paid in bi-weekly installments for 31 weeks) triggered by a single specific event, (2) gives Don the option of *continuing* his health care program benefits under an already-

established administrative scheme, and (3) does not otherwise include any administrative requirements that would require the exercise of discretion, the court concludes that the Agreement does not require an administrative scheme to meet the employer's obligation, and therefore is not an ERISA plan.

VI

Having concluded that the Agreement itself is not an ERISA plan, the court now turns to Aviall's argument that plaintiff's claim that Aviall breached the terms of the Agreement and subsequent contract to reinstate and extend Don's healthcare coverage is completely preempted by ERISA.

A

There are two types of ERISA preemption: conflict and complete preemption. *See Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 275 n.34 (5th Cir. 2004) (discussing ERISA conflict and complete preemption). Conflict (or ordinary) preemption occurs (1) when there is a direct conflict between the operation of federal and state law so that it is impossible to comply with both, or (2) when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in the federal statute. *Boggs v. Boggs*, 520 U.S. 833, 844 (1997) (internal quotation marks omitted) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000). Complete preemption, on the other hand, "exists when a remedy falls within the scope of or is in direct conflict with [29 U.S.C. § 1132(a)], and therefore is within the jurisdiction of federal court." *Haynes v.*

*Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)).

Aviall contends that plaintiff's state-law breach of contract claim is completely preempted by ERISA.  A state-law claim can be completely preempted under ERISA § 502, the statute's civil-enforcement provision, which "Congress intended to be the exclusive vehicle for suits by a beneficiary to recover benefits from a covered plan." *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 250 (5th Cir. 1990).  A state-law claim that is completely preempted under § 502 is transformed into a new federal claim. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08 (2004).  Section 502(a)(1)(B) preempts all suits involving ERISA-governed plans "brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  A cause of action falls within the scope of § 502(a)(1)(B), and is therefore completely preempted, if (1) the "individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210.

B

Aviall contends that ERISA completely preempts plaintiff's state-law claim for breach of contract.  It argues that the claim is based on allegations that Aviall breached the Agreement by failing to provide Don's family with medical coverage through March 2013 and then breached a subsequent contract to continue coverage from March 2013 through July

2012; that this claim falls squarely within the scope of the civil enforcement provision in § 502(a)(1)(B); and that the breach of contract claim is completely preempted and must be re-characterized into a federal claim under § 502(a)(1)(B).

C

A state-law cause of action is completely preempted under ERISA § 502(a)(1)(B) only if the plaintiff "at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and "where there is no other independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210.

1

Plaintiff could not have brought this state-law claim regarding the Agreement and subsequent contract to reinstate and extend Don's healthcare coverage as a claim for Severance Plan benefits under § 502(a)(1)(B) of ERISA. Section 502(a)(1)(B) authorizes civil actions by a participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(1)(B) "is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Davila*, 542 U.S. at 210. To satisfy the first prong of *Davila*, a claim must assert rights to which the plaintiff is entitled "*only because of* the terms of an ERISA-regulated employee benefit plan." *Id.* (emphasis added)

In the state-law breach of contract claim, plaintiff alleges that Aviall breached the

Agreement by failing to provide Don the specified health care coverage from November 2012 through March 2013 and breached a subsequent contract to reinstate and extend Don's healthcare coverage from March 19, 2013 through July 2013 to make up for the lapsed period. Plaintiff does not seek to recover benefits due Don under the Severance Plan, enforce Don's rights under the terms of the Severance Plan, or clarify his rights to future benefits under the terms of the Severance Plan. Nor could plaintiff do so since the Severance Plan does not provide any health care benefits.[14] Plaintiff's state-law claim regarding the Agreement and subsequent contract to reinstate and extend Don's healthcare coverage arises *under the Agreement and subsequent contract*, not under the Severance Plan. *See Kirkindoll v. Nat'l Credit Union Admin. Bd.*, 2014 WL 7178005, at *4 (N.D. Tex. Dec. 17, 2014) (Fitzwater, J) (holding that ERISA did not preempt plaintiff's state-law claims for money owed where claims arose under terms of agreement, not under ERISA plan). Accordingly, with regard to plaintiff's state-law contract claim related to the Agreement and subsequent contract to reinstate and extend Don's healthcare coverage, this claim could not have brought under ERISA § 502(a)(1)(B) in relation to the Severance Plan. And Aviall does not argue

---

[14]Aviall contends only that the Severance Plan and Agreement constitute an ERISA plan. The court has rejected Aviall's argument that the Agreement is a ERISA plan. Accordingly, the only "plan" the court considers in the context of Aviall's motion to dismiss is the Severance Plan. Although the court assumes that health care benefits are part Aviall's Health Plan, Aviall has not included a copy of the Health Plan in its appendix, and it has not provided the court any details regarding this plan. Nor does Aviall argue ERISA preemption based on the Health Plan. Accordingly, the court has not considered—because Aviall does not make this argument—whether the Health Plan constitutes an ERISA plan or whether Plaintiff's breach of contract claim could have been brought under § 502(a)(1)(B) as a claim for benefits under the Health Plan.

that plaintiff could have brought this claim under ERISA § 502(a)(1)(B) in relation to any other plan, including the Aviall, Inc. Health and Welfare Plan, or that this claim is completely preempted by COBRA.

2

Nor does plaintiff's state-law claim regarding the Agreement and subsequent contract to reinstate and extend Don's healthcare coverage satisfy the second requirement of *Davila*. Under this element, a claim is completely preempted only when there is no other independent legal duty that is implicated by a defendant's actions. *Davila*, 542 U.S. at 210. "If there is some other independent legal duty beyond that imposed by an ERISA plan, a claim based on that duty is not completely preempted under § 502(a)(1)(B)." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 949 (9th Cir. 2009).

Plaintiff alleges that Aviall violated the contractual duty owed to Don under state law by failing to provide him with health care coverage as specified in the Agreement, and by failing to reinstate and extend his healthcare coverage from March 19, 2013 through July 2013 to make up for the lapsed period. His state-law claim is "based on 'other independent legal dut[ies]' within the meaning of *Davila*." *Id.* at 950 (alteration in original).

D

In sum, there can be no serious disagreement that the Severance Plan is an ERISA plan. Plaintiff, however, is not seeking relief under the terms of that ERISA plan at all, but is, instead, proceeding solely on the basis of a separate, free-standing severance agreement. Under these circumstances, there is no complete ERISA preemption because the only ERISA

plan Aviall has established is the Severance Plan; plaintiff's state-law claim regarding the

Agreement and subsequent contract to reinstate and extend Don's healthcare coverage could

not at some point in time have been brought under ERISA § 502(a)(1)(B) to recover benefits,

to enforce rights, or to clarify his right to future benefits under the Severance Plan; and

plaintiff's breach of contract claim implicates other legal duties that are independent of

ERISA.  Accordingly, the court denies Aviall's motion to dismiss plaintiff's state-law claim

on the basis of complete ERISA preemption under § 502(a)(1)(B).[15]

VII

The court turns next to Aviall's contention that plaintiff cannot recover on a breach

of contract claim against Aviall absent an allegation that Don elected COBRA continuation

coverage, as the Agreement requires.[16]

A

The elements of a claim for breach of contract under Texas law are "(1) the existence

of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendants'

---

[15]Because Aviall moves to dismiss plaintiff's state-law claim only on the basis of *complete* preemption under § 502(a)(1)(B), the court does not address whether the claim is preempted under the doctrine of conflict preemption.

[16]Aviall raises this argument based on the presumption that plaintiff's breach of contract claim is completely preempted by ERISA and thus converted into a claim brought under ERISA.  *See* D. Br. 14-15 ("Moreover, [Don] cannot recover under ERISA on his claims against Aviall . . . because he does not (and, in all probability, cannot) allege that he elected COBRA continuation coverage.").  But Aviall's arguments are applicable even though the court has rejected Aviall's contention that plaintiff's breach of contract claim is completely preempted by ERISA and converted into a claim under § 502(a)(1)(B).

breach of the contract, and (4) damages to plaintiff resulting from the breach." *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F.Supp.2d 866, 872 (N.D. Tex. 2013) (Fitzwater, C.J.), *appeal docketed*, No. 16-11381 (5th Cir. Sept. 16, 2016) (citation omitted).

> Under Texas law, the court's primary concern when interpreting a contract is to ascertain the parties' intentions as expressed objectively in the contract. In doing so, the court must examine and consider the entire writing in an effort to harmonize and give effect to all contractual provisions, so that none will be rendered meaningless. Language should be given its plain and grammatical meaning unless it definitely appears that the parties' intention would thereby be defeated. Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous, and the court will construe it as a matter of law. A contractual provision is ambiguous when its meaning is uncertain and doubtful or if it is reasonably susceptible to more than one interpretation. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole, in light of the circumstances present when the contract was entered.

*Hoffman v. L&M Arts*, 774 F.Supp.2d 826, 832-33 (N.D. Tex. 2011) (Fitzwater, C.J.) (citing *Bank One, Tex., N.A. v. FDIC*, 16 F.Supp.2d 698, 707 (N.D. Tex. 1998) (Fitzwater, J.)), *aff'd in part, rev'd in part on other grounds*, 838 F.3d 568 (5th Cir. 2016). "A contract is not ambiguous merely because the parties have a disagreement on the correct interpretation." *REO Indus., Inc. v. Natural Gas Pipeline Co. of Am.*, 932 F.2d 447, 453 (5th Cir. 1991). Courts are to construe contracts "'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (quoting *Reilly v. Rangers Mgmt., Inc.*,

- 31 -

727 S.W.2d 527, 530 (Tex. 1987)).

B

Section 2 of the Agreement provides:



Compl. Ex. A at 1, ¶ 2 (emphasis added).   Thus Don was required to elect COBRA

continuation coverage in order to continue the health care coverage specified in § 2 of the

Agreement.   Plaintiff does not allege that Don elected COBRA continuation coverage.

Plaintiff asserts that, under the Agreement, "[Don]'s salary and medical/hospital/health

benefits *were to continue* until March 19, 2013, at which time [Don]'s employment at

Defendant would end."   Compl. ¶ 4.03 (emphasis added).   But this allegation is at odds with

the terms of the Agreement itself, which plaintiff has attached to the complaint and the court

is permitted to consider in deciding Aviall's motion to dismiss.   *See Lone Star Fund V (U.S.),*

- 32 -

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

In response to Aviall's motion to dismiss, plaintiff contends that the Agreement is ambiguous as to whether a COBRA notice was necessary to begin coverage "and in fact Aviall began coverage and continued it for about three (3) months before cancelling it in March 2013, even after Plaintiff had filed an election to continue it"; that "[c]ontrary to Aviall's claims that the insurance should never have . . . continued past March 19, 2013, the end of the severance period, [Don]'s paychecks reflect deduction of insurance premiums for about three (3) months then a cessation of reductions, then a resumption of deductions through the end of the severance period"; and that the insurance carrier's records reflect that Don had policy coverage for the entire severance period, "so the denial of benefits to [Don] and his family was arbitrary and unjustified."  P. Br. 2.

The court disagrees that the Agreement is ambiguous as to whether COBRA notice was necessary to begin coverage.  It states, clearly and unambiguously, that " ███████

████████████████████████████████████████████████████████████

████████████████████████████████ Compl. Ex. A at 1, ¶ 2.  And plaintiff's other allegations—to the extent they are actually pleaded in the complaint—do not plausibly allege that Don elected COBRA coverage or that Aviall—explicitly or implicitly—excused his obligation to so.

Accordingly, the court grants Aviall's motion to dismiss plaintiff's breach of contract claim to the extent this claim is based on Aviall's "fail[ure] to provide to [Don] the health care coverage specified in § 2 of the [A]greement from November, 2012, through the first

- 33 -

or second week of March, 2013."  Compl. ¶ 5.02.

## C

The court denies Aviall's motion to dismiss plaintiff's breach of contract claim on the basis that ERISA prohibits oral modifications to written employee benefit plans.  The court has concluded above that the Agreement does not constitute an employee benefit plan governed by ERISA.  *See supra* § V(C)(2).  Accordingly, Aviall's argument that the Agreement cannot be orally modified *based on the provisions of ERISA* is inapplicable.[17]

## VIII

Finally, Aviall maintains that ERISA preempts all of plaintiff's requests for extra-contractual damages.  It cites cases in which it maintains courts have held that "extra-contractual damages akin to those sought by [Don] in the Complaint to be unavailable in an ERISA action such as this."  D. Br. 14.  And Aviall moves the court to dismiss with prejudice all of plaintiff's requests for extra-contractual damages.

At the motion to dismiss stage, the court must decide whether plaintiff has pleaded a plausible claim for relief.  *See, e.g., Twombly*, 550 U.S. at 570.  In the second count of the complaint, plaintiff alleges that Aviall "failed to give timely, proper notice of the right of [Don] to extend health care coverage after March 19, 2013, and/or to act upon [Don]'s election to secure such coverage."  Compl. ¶ 6.02.  In connection with this claim, plaintiff seeks "the fines and penalties, and other remedies, including damages and attorneys' fees,

---

[17]Because the question has not been raised, the court does not consider whether Texas law would similarly prohibit the alleged oral modification of the Agreement.

provided in ERISA . . . including the civil remedies provided in § 1132(a)(3) for pain,

suffering and death, and for paid and incurred hospitalization and medical costs and

expenses." *Id.* ¶ 6.03. Aviall does not move to dismiss count two of the complaint on the

merits.

Section 1132(a)(3) of Title 29 provides, in pertinent part, that a civil action may be

brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act
> or practice which violates any provision of this subchapter or the
> terms of the plan, or (B) to obtain other appropriate equitable
> relief (i) to redress such violations or (ii) to enforce any
> provisions of this subchapter or the terms of the plan.

*Id.* Although the statute confers broad discretion on courts when granting equitable damages,

some courts have limited recoveries in the context of COBRA notice violations. Such

recoveries have been confined to compensatory damages, measured by the extra medical

expenses that the plaintiff incurred post-termination because he was not notified of his right

to continue coverage, minus deductibles and premiums that the plaintiff would have had to

pay under COBRA to continue coverage. *See, e.g., Sonnichsen v. Aries Marine Corp.*, 673

F.Supp.2d 466, 474 (W.D. La. 2009) ("When COBRA violations result in the loss of a

qualified beneficiary's insurance coverage, courts have interpreted ERISA's civil

enforcement statute as entitling the qualified beneficiary to compensatory damages in an

amount equal to medical expenses minus deductibles and premiums that the beneficiary

would have had to pay for COBRA coverage."); *Ward v. Bethenergy Mines, Inc.*, 851

F.Supp. 235, 240 (S.D. W. Va. 1994) ("The purpose of the civil enforcement provisions of

COBRA is, above all, to put plaintiffs in the same position they would have been in but for the violation." (citation omitted)).

If plaintiff is successful on Don's ERISA claim, the court will award any proved damages that are available under the statute.[18]  If plaintiff can show an entitlement to compensatory damages, plaintiff may also be entitled to attorney's fees and costs.  *See* 29 U.S.C. § 1132(g).  Although the court does not suggest that plaintiff will be able to recover extra-contractual damages in connection with the ERISA claim, the court declines, at this stage in the proceedings, to dismiss plaintiff's requests for extra-contractual damages.[19]

---

[18]The holdings in § VII(B) and § VIII are distinguishable because they address different omissions and benefits that relate to different time periods.

Section VII addresses plaintiff's breach of contract claim, holding that if Don wanted to elect COBRA coverage for the initial severance period, and, after that, for a longer period at this own expense, he was required under the Agreement to elect COBRA coverage. Because plaintiff does not plausibly allege that Don made such an election, the court dismisses plaintiff's breach of contract claim to the extent it is based on Aviall's failure to provide Don the health care coverage specified in § 2 of the Agreement from November 2012 through the first or second week of March 2013.

Section VIII, in contrast, addresses plaintiff's ERISA claim, which alleges that Aviall failed to adequately notify Don of his right under ERISA to extend health care coverage after the end of the normal severance period and/or to act upon his election to secure such coverage.  Because plaintiff has adequately pleaded that Aviall "failed to give timely, proper notice of the right of Plaintiff to extend health care coverage after March 19, 2013, and/or to act upon [Don]'s election to secure such coverage," Compl. ¶ 6.02, the court declines to dismiss plaintiff's claim for extra-contractual damages under ERISA.

[19]Aviall maintains that, because claims for benefits under § 1132(a)(1)(B) do not entitle the participant to a jury trial, "the Court should find that [plaintiff] is not entitled to a jury trial on any of [plaintiff's] claims."  D. Br. 17.  Plaintiff has not responded to this argument.  Because the court has concluded that ERISA does not completely preempt plaintiff's state-law breach of contract claim, it declines at this juncture to hold that plaintiff is not entitled to a jury trial on any claim.  The court will revisit this question later, if necessary.

*   *   *

Accordingly, for the reasons explained, the court grants Aviall's motion to dismiss plaintiff's claim for breach of the Agreement, but it otherwise denies the motion.

**SO ORDERED**.

January 6, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE