IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RACHEL B. THORSON,                    §
                                      §
                    Plaintiff,        §
                                      §  Civil Action No. 3:15-CV-0571-D
VS.                                   §
                                      §
AVIALL SERVICES, INC., et al.,        §
                                      §
                    Defendants.       §

MEMORANDUM OPINION
AND ORDER

        This is an action by plaintiff Rachel B. Thorson ("Rachel"), the mother of decedent

Don Thorson ("Don"), arising from the alleged failure of defendant Aviall Services, Inc.

("Aviall") to provide Don with continuing health insurance coverage following his

termination. Aviall and defendant Conexis Benefits Administrators, L.P. ("Conexis"), who

was Aviall's benefits administrator, each move for summary judgment. Concluding that fact

issues remain for trial on part of Rachel's breach of contract claim against Aviall, but that

Rachel has failed to create a genuine issue of material fact as to her other claims, the court

grants Conexis' motion for summary judgment and grants in part and denies in part Aviall's

motion for summary judgment. The court also grants in part and denies in part defendants'

motion to strike summary judgment evidence and expert designations, grants Rachel's

motion for leave to file supplemental response, and denies as moot defendants' motion to

exclude expert opinion of Allyn Needham ("Dr. Needham").

# I

In August 2012, as part of a corporate restructuring, Aviall terminated Don's employment as Senior Manager of Business Development.[1] Aviall and Don entered into a severance agreement ("Agreement") under which Don was to continue to receive his base salary as severance pay until March 19, 2013 ("Severance Period"). In addition, the Agreement provided, in pertinent part:

> The Company's health care program benefits will be provided in accordance with the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, ("COBRA"), and the terms of the Company's health care program, as it may be amended from time to time. Employee and/or his eligible dependents must elect COBRA continuation coverage in order to continue medical and/or dental and/or vision benefits. In the event Employee elects COBRA continuation coverage for Employee and/or his eligible dependents, the Company will pay the same portion of the Employee's COBRA premiums that it pays for similarly-situated active employees of the Company until the earlier of (i) the last day of the Severance Period; (ii) the date Employee fails to timely pay the employee portion of the COBRA premium; (iii) the date Employee becomes covered by any other group health plan (as an employee or otherwise) or becomes eligible for medical and/or dental and/or vision benefits as an employee of another employer; (iv) the expiration of the applicable COBRA continuation coverage period as determined in accordance with the terms of the Company's health care program; or (v) the date the Company's health care program terminates.

---

[1] In deciding defendants' summary judgment motions, the court views the evidence in the light most favorable to plaintiff as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

P. App. 12.

On August 22, 2012 defendant Conexis, Aviall's then-benefits administrator, sent Don a COBRA election form ("First COBRA Election Form") via first class mail to his residence address. The notice gave Don until November 2, 2012 to elect COBRA coverage. It is undisputed that Don never returned the First COBRA Election Form.

In January 2013 Don discovered that Aviall had terminated his health insurance in November 2012 after Don did not return the First COBRA Election Form. In a February 27, 2013 letter to Curt Brusto, Aviall's former Vice President of Human Resources, Don demanded "immediate effective attention," explaining:

> [p]er my severance contract, my family and I should be covered (rather, have the opportunity to elect coverage) under a COBRA health plan at this time. I received nothing in terms of information, registration forms or related information. Ken Ceaser, Aviall HR, has been contacted regarding this serious problem without reply or a courtesy response. I have a teen-age daughter with [a] medical condition causing seizures. She requires expensive medications and ongoing medical treatment. My wife and I have also had to forgo treatment for our medical concerns during this time, as we have no medical insurance. This situation must be resolved without delay or complications.

P. App. 17. Don's letter was referred to Gina Lesko ("Lesko"), an Aviall benefits manager.

Rachel and Aviall agree that Lesko telephoned Don after she received his letter, but they dispute what was said during the call. Rachel contends that Lesko told Don that he had "dropped through the cracks which caused his insurance to be cancelled," P. Br. 5, and that Aviall would remedy the mistake in canceling his insurance by giving him extended insurance coverage beyond March 19, 2013, for the same period as the period of cancellation.

Aviall maintains that, when Lesko telephoned Don, Don informed her that he had not received the First COBRA Election Form; that Lesko confirmed that Don's mailing address on file was correct and informed him that he needed to complete a COBRA enrollment form to receive COBRA coverage; and that the conversation was limited to Don's election of COBRA coverage, and there was no discussion of the dates of Don's coverage, extending his coverage, any denied claims, or payment of insurance premiums.

On March 19, 2013 Lesko emailed Don another COBRA election form. Her transmittal email stated:

> Please complete and sign the 2013 COBRA Benefit Election form and return it to me. Per our conversation on Thursday, you expressed that you only wanted Medical for yourself + Family and would like to waive Dental. . . . Once I receive the completed form, I will contact Conexis with your election and they will generate the COBRA election form for you to complete.

Aviall App. 22. Lesko also emailed Conexis, approving Don's reinstatement and requesting that another COBRA election notice be sent to him. She indicated in her email that Don's COBRA start date should be April 1, 2013. Per Lesko's request, Conexis sent Don a second COBRA election form with an election deadline of May 22, 2013. Rachel contends that Don received Lesko's March 19, 2013 email and signed and returned the COBRA election for that she sent him, but that he never received a COBRA form from Conexis. Aviall maintains that Don did not return the enrollment form provided by Lesko or the second COBRA election form provided by Conexis.

On July 11, 2013 Don's wife Marieva was diagnosed with stage 4 colon cancer. Don

learned on that same date that Aviall had terminated his family coverage on March 31, 2013. Marieva died in August 2014.

Don brought the instant lawsuit against Aviall and Conexis, alleging claims for breach of the Agreement and breach of the subsequent contract to reinstate and extend his healthcare coverage. Don also asserted a claim under ERISA,[2] alleging that Aviall and Conexis failed to give him timely, proper notice of his right to extend health care coverage after March 19, 2013, and that they failed to act on his election to secure such coverage. On April 23, 2015 Don died. Following Don's death, his mother Rachel was substituted as plaintiff under Fed. R. Civ. P. 25(a)(1).

In *Thorson v. Aviall Services, Inc.*, 2017 WL 361895 (N.D. Tex. Jan. 6, 2017) (Fitzwater, J.) ("*Thorson I*"),[3] the court granted in part and denied in part Aviall's motion to dismiss the complaint. *Id.* at *12-13. It held, *inter alia*, that Aviall was entitled to a dismissal of Rachel's breach of contract claim to the extent the claim was based on the failure to provide Don health care coverage from November 2012 through March 2013 because Rachel had not alleged that Don elected COBRA coverage, as the Agreement required. *Id.* After the court issued *Thorson I*, Rachel requested, and the court granted, leave to file a first amended complaint ("amended complaint"). In the amended complaint, Rachel re-pleads the dismissed breach of contract claim, alleging that Don signed and returned the

---

[2]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

[3]Although the public version of *Thorson I* was docketed on January 24, 2017, the date the memorandum opinion and order was filed is January 6, 2017.

"2013 COBRA Benefit Election Form" that Lesko emailed to him on March 19, 2013. Rachel also asserts claims against Aviall and Conexis for negligence and gross negligence.

Aviall and Conexis each move for summary judgment. Rachel moves for leave to file a supplemental response to present newly discovered evidence. Aviall and Conexis oppose Rachel's motion and move to strike her summary judgment evidence and expert designations. They also move to exclude the expert opinion of Rachel's expert, Dr. Needham.

II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim or defense for which the movant will

have the burden of proof at trial, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) ( Fitzwater, J.)).

## III

The court turns first to Aviall's motion for summary judgment on Rachel's claim that Aviall "breached the [Agreement] by failing to provide to [Don] the health care coverage specified in § 2 of the [A]greement from November, 2012, through the first or second week of March, 2013."  Am. Compl. ¶ 5.02.

## A

The Agreement clearly and unambiguously states that "[e]mployee and/or his eligible dependents *must elect COBRA continuation coverage* in order to continue medical and/or dental and/or vision benefits."  P. App. 12 (emphasis added).  Thus "Don was required to elect COBRA continuation coverage in order to continue the health care coverage specified in § 2 of the Agreement."  *Thorson I*, 2017 WL 361895, at *13.  In other words, the

Agreement required Don to elect COBRA continuation coverage as a condition precedent to Aviall's contractual obligation to provide him continuing health care benefits under its health care program.

Aviall moves for summary judgment on Rachel's claim for breach of the Agreement, contending, *inter alia*, that Rachel has not alleged that Don ever returned the original COBRA enrollment form, which was required for continuation of coverage. Rachel responds that Don signed and returned the COBRA election form that he received from Lesko, as alleged in ¶ 4.09 of the amended complaint. She offers the following summary judgment evidence to support her position: (1) an statement in Don's April 16, 2015 affidavit that "I signed and returned the election form [that Lesko sent via email on March 19, 2013]," P. App. 7; (2) a document marked as Exhibit 8 that shows Lesko's signature block, an attachment entitled "2013 COBRA Election Form_Thorson.doc," and a second, untitled attachment; and (3) a completed 2013 Aviall Inc. COBRA Open Enrollment Election Form dated March 19, 2013 that was obtained from Don's home computer after Rachel responded to Aviall's motion for summary judgment.

B

Before the court can determine whether Rachel has created a genuine issue of material fact on the question whether Don elected COBRA continuation coverage, it must address the motion of Aviall and Conexis to strike Rachel's summary judgment evidence.

1

The court begins with the request of Aviall and Conexis to strike Don's affidavit.

Aviall and Conexis contend that Don's affidavit should be stricken in its entirety because Don is deceased and his affidavit therefore constitutes inadmissable hearsay that does not fall within a hearsay exception.[4]

Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Both sides appear to agree that Don's affidavit constitutes hearsay that would be inadmissible at trial. *See* Fed. R. Evid. 801. Rachel maintains, however, that the affidavit is admissible under Fed. R. Evid. 804(b)(1)(A) and 807.

Fed. R. Evid. 804(b)(1)(A) provides an exception to the hearsay rule for testimony that "was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one." Rachel maintains that, because Don's affidavit was offered earlier as testimony in this case (i.e., to contest a motion to dismiss), and defendants could have taken his deposition, but failed to do so, the statements in Don's

---

[4]*See, e.g., Stacy v. Paschall Truck Lines, Inc.*, 2014 WL 12531110, at *2 (N.D. Tex. July 22, 2014) (Godbey, J.) (striking deceased affiant's affidavit as hearsay because party offering affidavit "has not shown that the affidavit itself falls within a hearsay exception"); *House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co.*, 775 F.Supp.2d 302, 316 (D. Mass. 2011) (striking, in context of summary judgment motion, affidavits of deceased affiants on ground that affidavits were hearsay that did not fall within a hearsay exception); *Rodriguez-Laboy v. R & R Eng'g Prods., Inc.*, 2006 WL 852086, at *1 (D. P.R. Mar. 30, 2006) (striking affidavit of deceased affiant as hearsay for purposes of summary judgment); *Reinhardt v. Key Risk Mgmt., Inc.*, 2003 WL 292176, at *1 (N.D. Tex. Feb. 6, 2003) (Godbey, J.) (striking affidavit of deceased affiant because affiant "would not be available to present the evidence through direct testimony, and the affidavit itself would be objectionable hearsay at trial.").

affidavit fall within Rule 804(b)(1)(A) and are excepted from the hearsay rule. The court disagrees.

Rule 804(b)(1)(A) provides an exception to the hearsay rule for testimony previously given as a witness in a trial, hearing, or lawful deposition. Don's affidavit does not qualify under any of these three categories. Accordingly, his affidavit does not qualify under Rule 804(b)(1)(A) as an exception to the rule against admitting hearsay.

Rachel contends next that Don's affidavit falls within the residual exception to the hearsay rule. "Rule 807's residual hearsay exception allows the admission of hearsay statements that are not covered by another exception if the statements have 'equivalent circumstantial guarantees of trustworthiness' and the district court determines that they are material, probative, and in the interests of justice." *United States v. El-Mezain*, 664 F.3d 467, 497 (5th Cir. 2011) (citing Fed. R. Evid. 807; *United States v. Ismoila*, 100 F.3d 380, 393 (5th Cir. 1996)). The Rule 807 exception, however is to be "used only rarely, in truly exceptional cases." *United States v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005) (quoting *United States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000)).

> Moreover, "[t]he proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force. In order to find a statement trustworthy, a court must find that the declarant of the . . . statement 'was particularly likely to be telling the truth when the statement was made.'"

*El-Mezain*, 664 F.3d at 498 (alteration in original) (quoting *Phillips*, 219 F.3d at 419 n.23).

In support of her contention that Don's affidavit falls within the residual exception of Fed.

R. Evid. 807, the entirety of Rachel's argument is this:

> Further, FRE 807 provides a residual exception to the general
> exclusionary rule applicable to hearsay when the following
> circumstances are present, as in this case:
>> (1) the statement has equivalent circumstantial
>> guarantees of trustworthiness;
>> (2) it is offered as evidence of a material fact;
>> (3) it is more probative on the point for which it is
>> offered than any other evidence that the proponent
>> can obtain through reasonable efforts; and
>> (4) admitting it will best serve the purposes of
>> these rules and the interests of justice.
> Plaintiff gives notice under FRE 807(6) that Plaintiff intends to
> offer the affidavit and its particulars at trial or hearing.

P. 12/21/17 Br. 4 (paragraph numbering omitted). Rachel's argument consists of little more than quoting the content of Fed. R. Evid. 807 and is insufficient to meet her "heavy burden" of establishing that this constitutes an "exceptional case" in which the residual exception applies.

Rachel has not established that the statements of Don's affidavit fall within any of the exceptions to the hearsay exclusionary rule. The court therefore holds that, if offered in evidence at trial, the affidavit would be inadmissible hearsay. Because at trial Rachel would not be able to rely on Don's affidavit as admissible evidence, she cannot now rely on his affidavit to defeat defendants' summary judgment motions. *See* Rule 56(c)(4). Accordingly, the court grants defendants' motion to strike Don's affidavit. *See Reinhardt*, 2003 WL 292176, at *1.

2

The court next considers the request of Aviall and Conexis to strike Exhibit 8. Aviall

and Conexis move to strike this exhibit as unauthenticated. They maintain that Rachel has not introduced any evidence that establishes that the two pages of Exhibit 8 are part of a single email, or that Exhibit 8 is actually Don's forwarding a completed COBRA enrollment form to Lesko. In response, Rachel agrees that page 2 of Exhibit 8 should be stricken because further investigation has established that it was part of an email from Don to counsel. But she contends that the first page of Exhibit 8 is admissible because "it appears to support Don's statement in his affidavit that he 'signed and returned the election form.'" P. 12/21/17 Br. 5.

The court grants the request of Aviall and Conexis to strike page 2 of Exhibit 8, which Rachel now acknowledges is not part of an email in which Don forwarded a completed COBRA enrollment form to Lesko.

The court also grants defendants' request to strike page 1 of Exhibit 8. Fed. R. Evid. 901 provides: "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rachel contends that page 1 of Exhibit 8 is an email in which Don returned the signed COBRA election form to Lesko. But she has produced no evidence that would support a finding that this evidence is what she claims it is. As reflected in the attachment to this memorandum opinion and order,[5] page 1 of Exhibit 8 consists of Lesko's name, title, and contact information. Below that is a privacy disclaimer that

---

[5]A copy of page 1 is attached to this memorandum opinion and order as an "Attachment."

identifies the document as being an "e-mail message" and refers to possible "attachments." And beneath the disclaimer are two thumbnail-like images that appear to identify files attached to an email: one attachment, which appears by its file name extension to be a Word document, is entitled "2013 COBRA Election Form_Thorson.doc," and the other attachment is untitled. Page 1 of Exhibit 8 contains no date, no information that identifies a sender or recipient, and no content that would provide any context for the two attachments. Moreover, Lesko testified at her deposition that she did not recall ever receiving an election benefit form returned from Don. *See* P. 11/22/17 App. 43 (when questioned about Exhibit 8, Lesko testified, in pertinent part: "I do not recall receiving an election benefit form returned from Mr. Thorson."). The only evidence on which Rachel appears to rely to authenticate Exhibit 8 is the statement in Don's affidavit—which Rachel has failed to establish is admissible as a hearsay exception, *see supra* § III(B)(1)—that he "signed and returned the election form." Even assuming *arguendo* that this statement from Don's affidavit is admissible in evidence, there is nothing in it that would enable a reasonable jury to find that *Exhibit 8* is direct or circumstantial proof that Don returned the COBRA election form to Lesko. In fact, Don does not even state in his affidavit that he returned the COBRA election form via email. A jury would therefore be required to engage in pure speculation to infer from page 1 of Exhibit 8 that it proves that Don was returning the signed COBRA election form to Lesko.

The court agrees that page 1 of Exhibit 8 is unauthenticated and inadmissible. Accordingly, the court grants defendants' motion to strike this evidence. *See, e.g., Obey v. Frisco Med. Ctr., L.L.P.*, 2015 WL 417509, at *3 (E.D. Tex. Jan. 30, 2015) (striking from

summary judgment record as unauthenticated and inadmissible an unsigned letter where there was no accompanying affidavit, nothing in the letter itself to indicate its author, and no evidence showing that it was ever sent).

3

On December 5, 2017 Rachel moved for leave to file a supplemental response in order to present a signed COBRA enrollment form that her attorneys discovered on Don's computer after Rachel filed her summary judgment response. Aviall and Conexis move to strike this evidence, contending that the form is not properly authenticated; that because Rachel has failed to introduce sufficient evidence to support her claim that Don completed the form and timely transmitted it to Aviall, it should be disregarded; and that Rachel has failed to provide a sufficient reason for her delay in discovering and producing the form.

Rachel responds by relying on her own affidavit in which she states that she is "familiar with Don's handwritten signature and can state under oath that I recognize the signature on [the signed COBRA election form] as belonging to my son Don." P. 12/21/17 Br. at Ex. A. She also maintains that there are exceptional circumstances surrounding discovery of new evidence in this case, explaining that it did not occur to her counsel to search Don's computer until they were reviewing the summary judgment evidence in order to prepare their response to defendants' motion, and that the evidence was not discovered until after Rachel filed her summary judgment response.

Rachel's affidavit is sufficient evidence at the summary judgment stage to authenticate the signed COBRA election form. *See* Fed. R. Evid. 901(b)(2) ("A nonexpert's opinion that

handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation" satisfies the authentication requirement).  But as the court explains below, the signed COBRA election form is insufficient of itself to create a genuine issue of material fact on the question whether Don elected COBRA continuation coverage—a precondition to Aviall's contractual obligations under the Agreement.  The court therefore declines to strike the signed COBRA election form because considering this evidence will not change the outcome in this case.[6]

C

The signed COBRA election form recovered from Don's personal computer is the only remaining evidence that Rachel relies on to create a genuine issue of material fact on the question whether Don elected COBRA continuation coverage.  A reasonable jury could not find, however, on this evidence alone that Don in fact returned the form to Aviall or that he otherwise elected COBRA continuation coverage, as required in the Agreement.  A reasonable jury could only infer that he completed the form and that a copy of the completed form was found on his computer.  Accordingly, the court concludes that Rachel has failed to create a genuine issue of material fact on the question whether Don elected COBRA continuation coverage, as required under the Agreement.

---

[6]For the same reason—i.e., the signed COBRA election form does not create a genuine issue of material fact sufficient to overcome Aviall's motion for summary judgment on the question whether Don ever elected COBRA coverage—the court also declines at this juncture to grant defendants' motion to strike Gabriel Best ("Best") as an expert witness.  If plaintiff intends to offer the testimony of Best at trial, defendants will be permitted to re-file their motion to strike.

D

Rachel maintains that defendants waived the defense of no election and are estopped from asserting such a defense by charging and collecting premiums from Don through November 9, 2012, and from March 15, 2013 through March 29, 2013. Defendants respond that Lesko's email to Conexis requesting issuance of a second enrollment form directly contradicts an intent to waive the COBRA enrollment form requirement and is better characterized as attempting to induce Don to perform the contract, which does not amount to waiver.

Under Texas law, waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). "The failure to perform conditions precedent may be waived by failure to insist on performance, and departures from the strict terms of the contract, by failing to object at the time, or by accepting what is done by the other party as a full performance." *Kennedy v. McMullen*, 39 S.W.2d 168, 174 (Tex. Civ. App. 1931, writ ref'd) (citation omitted). Waiver of a condition precedent may be inferred from a party's conduct. *Sun Exploration & Prod. Co.*, 728 S.W.2d at 37.

Aviall does not dispute that it deducted Don's share of health insurance premiums through November 9, 2012, and from March 15 through March 29, 2013. Although a reasonable jury could easily find, based on Lesko's deposition testimony and March 19, 2013 email to Don asking him to complete the COBRA election form, that Aviall did *not* intend to waive the requirement that Don complete the COBRA election form as a condition

precedent to his being entitled to continuing health care under the Agreement, it could also find, based on apparently undisputed evidence that Aviall deducted Don's share of insurance premiums despite the fact that Don had never signed and returned a COBRA election form, that Aviall intended to waive this requirement, at least during the Severance Period.[7] Accordingly, because a genuine issue of material fact exists on the question of waiver, the court denies defendants' motion for summary judgment based on Don's failure to sign and return the COBRA election form.

E

Aviall moves for summary judgment on the ground that the evidence establishes that there is no basis for Rachel's claim that Aviall failed to provide coverage from November 2012 through March 2013. Aviall relies on Lesko's testimony that Don was continuously covered during the Severance Period, and on United HealthCare's ("United's") documentation of Don and his dependents' coverage as continuing through March 31, 2013. Rachel responds that she has obtained from United the medical claims filed by providers during the 180-day COBRA period, and has prepared a table of claims "all of which appear to be either unpaid or rejected." Ps. 11/22/17 Br. 13. Aviall replies that Rachel has relied on claim forms provided by providers, rather than explanation of benefits forms ("EOBs");

_____

[7]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

that only EOBs would indicate when a claim was not paid by insurance; and that of the two EOBs United produced in discovery, only one was within the potential 18-month COBRA coverage period.

The court concludes that there is a genuine issue of material fact on the question whether Aviall breached the Agreement by failing to provide Don health insurance during the Severance Period. Rachel has produced call records from United that indicate that Don's coverage terminated on December 31, 2012. And Aviall explains in a footnote:

> It appears Marieva and Don contacted United on January 7, 2013 and January 8, 2013 and may have been advised by United that their coverage had been terminated on December 31, 2012 due to Don's failure to elect COBRA coverage. However, on March 18, 2013 and April 2, 2013, United added coverage from January 1, 2013 through March 31, 2013, and therefore Don and his dependents were continuously covered during the severance period. United did not bill Aviall for Don's January, February, and March 2013 coverage until March 9, 2013. As a result, Aviall did not deduct insurance premiums from Don's severance pay from January 1, 2013 through March 1, 2013, but deducted premiums for all three months from Don's final severance payments on March 13, 2013 and March 29, 2013.

Aviall 11/10/17 Br. 3 n.17 (citations omitted). Even if it is true, as Aviall contends, that United retroactively added Don's coverage from January 1, 2013 through March 31, 2013 and that the result was that Don and his dependents were continuously covered for that period,[8] this does not preclude a finding that Aviall breached the Agreement by failing to

---

[8]Of course, Rachel's failure to produce any evidence of a Severance Period claim that was filed and but not paid, as provided in the Agreement, may suggest that she will be unable to prove certain (or any) contractual damages at trial. But Aviall does not move for summary judgment based on Rachel's alleged inability to prove contractual damages.

provide Don continuation coverage from November 2012 through the first or second week of March 2013.

## F

Accordingly, because there are genuine issues of material fact with respect to Rachel's breach of contract claim based on the Agreement, the court denies Aviall's motion for summary judgment on this claim. Although a reasonable jury could not find that Don returned the COBRA election form, as the Agreement required, it could at least find that Aviall waived Don's failure to sign and return the form and that Aviall breached the Agreement by failing to provide Don health insurance during the Severance Period.

## IV

The court next considers Aviall's motion for summary judgment on Rachel's claim that Aviall "breached a subsequent contract to reinstate and extend and/or renew Don's healthcare coverage from March 19, 2013, for the COBRA period of eighteen (18) months, commencing April 1, 2013." Am. Compl. ¶ 5.03.

## A

Aviall moves for summary judgment on the ground that, because there is no written documentation signed by Aviall reflecting the alleged oral agreement between Lesko and Don extending Don's COBRA coverage for an additional 18 months, the Agreement itself and Texas' statute of frauds render any oral agreement unenforceable. Rachel does not respond to these arguments.

B

Under the Texas statute of frauds, a promise or agreement that cannot be fully performed within one year is not enforceable unless there is a writing signed by the party against whom enforcement is sought. *See* Tex. Bus. & Com. Code Ann. § 26.01 (West 2015). It is undisputed that the alleged oral agreement between Don and Lesko had an 18-month term and that there is no writing, signed by Aviall, reflecting this agreement.

The statute of frauds is an affirmative defense, *see Miller v. Argumaniz*, 479 S.W.3d 306, 309 (Tex. App. 2015, pet. denied), that must be pleaded under Rule 8(c)(1). Aviall did not plead this affirmative defense. But "a technical failure to comply precisely with Rule 8(c) is not fatal. Rather, it is left up to the discretion of the trial court to determine whether the party against whom the unpleaded affirmative defense has been raised has suffered prejudice or unfair surprise." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013) (internal quotation marks and citations omitted).

Because Rachel has not responded to these arguments, there is no indication in the record that she has suffered prejudice or unfair surprise from Aviall's reliance on the statute of frauds. Therefore, the court in its discretion will consider whether Aviall is entitled to summary judgment on this basis.

Aviall has established beyond peradventure that the alleged oral agreement between Don and Lesko had an 18-month term, and that there is no writing, signed by Aviall, reflecting this agreement. It has therefore met its burden of establishing that Rachel's claim

that Aviall breached a subsequent contract to reinstate and extend and/or renew Don's healthcare coverage from March 19, 2013, for the COBRA period of 18 months commencing April 1, 2013 is barred as a matter of law by the Texas statute of frauds.

V

Aviall moves for summary judgment on the ground that Rachel's alleged damages—medical bills incurred by Don and Marieva after the severance period, unpaid bills incurred and owed by Don's personal business, pain and suffering, and payments made on Don's mortgage after his death—are too attenuated to establish the causation necessary for her breach of contract claims. "Generally, the measure of damages for breach of contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed." *L & C Consultants, LLC v. ASH Petroleum, Inc.*, 2009 WL 3110200, at *9 (N.D. Tex. Sept. 29, 2009) (Fitzwater, C.J.) (quoting *Penner Cattle, Inc. v. Cox*, 287 S.W.3d 370, 372 (Tex. App. 2009, pet. denied)), *aff'd*, 464 Fed. Appx. 199 (5th Cir. 2010). If Rachel succeeds at trial on a breach of contract claim, she will be limited to the amount of damages that would restore her to the position that Don would have been in had the contracts not been breached. The court declines at this juncture to speculate regarding what amount of damages, if any, Rachel will be able to prove at trial.

VI

Aviall moves for summary judgment on Rachel's negligence and gross negligence claims. Under Texas law, the "elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *IHS*

*Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004).

Gross negligence is defined to mean an act or omission:

>    (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
>    (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (West 2015).

   Aviall moves for summary judgment on the ground that it did not owe Don any legal duty as his former employer.  In response, Rachel contends:

>    [i]f Defendants had refused to accept premiums for health insurance coverage until Don made an election then Don would have been advised of the need for the election.  Instead, Defendants elected to collect the premiums for coverage and then justify their failure to pay claims by alleging a failure to make an election.  Defendants['] actions in collecting premiums by payroll deductions while defending against claim based upon a failure to elect COBRA reflects negligence and gross negligence in administering the severance contract.

P. 11/22/17 Br. 14.

   In *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991), the Supreme Court of Texas addressed "whether a cause of action for negligence is stated by an allegation that a telephone company negligently failed to perform its contract to publish a Yellow Pages advertisement."  *Id.* at 493.  The court concluded that because the plaintiff "sought damages for breach of a duty created under the contract, rather than a duty imposed

- 22 -

by law, the claim sounded only in contract." *Id.* at 494. It explained:

> [i]f the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

*Id.*

Here, Rachel complains about Aviall's "negligence in administering the severance contract." P. 11/22/17 Br. 14.[9] She neither argues nor has adduced evidence that Aviall breached any duty other than the one created by the Agreement. In other words, under her negligence/gross negligence theory, Aviall's duty to Don arose, if at all, only from the Agreement. *See Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 869 (Tex. App. 1997, no writ) ("[I]f a party must prove the contents of its contract and relies on the duties created therein, the action is in substance an action on the contract."). Accordingly, the court grants Aviall's motion for summary judgment on Rachel's claims for negligence and gross negligence.

---

[9]Rachel also alleges that Aviall failed to give proper COBRA notices so that COBRA coverage could be extended and/or initiated, and that this failure to provide proper notices constituted negligence and gross negligence. Am. Compl. ¶ 5.06. In response to Aviall's motion for summary judgment, however, in which Aviall contends that "Lesko did exactly what she said she would do. It is undisputed that Lesko emailed Don a COBRA enrollment form and Conexis, at Lesko's request, sent Don a second COBRA enrollment form," Aviall 11/10/17 Br. 15, Rachel adduces no evidence that Aviall failed to give Don proper COBRA notices.

VII

The court now turns to Rachel's claim that defendants violated ERISA by failing to give Don timely, proper notice of his right to extend health care coverage after March 19, 2013, and/or to act upon his election to secure such coverage. Am. Compl. ¶ 6.02.[10]

COBRA requires sponsors of group health plans to provide plan participants who lose coverage because of a "qualifying event" the opportunity to choose to continue health care coverage on an individual basis. *Degruise v. Sprint Corp.*, 279 F.3d 333, 336 (5th Cir. 2002) (citing 29 U.S.C. §§ 1162, 1163). A "qualifying event" includes the termination of a covered employee's employment. 29 U.S.C. § 1163(2). "[A]n employer has a duty to report most qualifying events, including the termination of employment, to its group health plan administrator within 30 days of the qualifying event. The plan administrator must then notify the qualified beneficiary within 14 days of being notified of the qualifying event by the employer." *Miles-Hickman v. David Powers Homes, Inc.*, 589 F.Supp.2d 849, 878 (S.D. Tex. 2008) (citing 29 U.S.C. § 1166(c)). When an employer is also the administrator of the health plan, the employer must give detailed written notice of the availability of COBRA benefits within 44 days after the date of the qualifying event. *Id.* (citing 29 C.F.R. § 2590.606-4(b)).

---

[10]To the extent Rachel bases her ERISA claim on defendants' failure to "act upon Don's election to secure [extended health care] coverage," Am. Compl. ¶ 6.02, the court has already concluded above that Rachel had failed to adduce evidence sufficient to permit a reasonable jury to find that Don returned the March 19, 2013 COBRA election form to Lesko. *See supra* § III(C).

Here, Don's "qualifying event" under COBRA—i.e., the termination of his employment with Aviall—occurred on August 14, 2012. On August 22, 2012 Conexis sent a COBRA notification to Don's residence address via first class mail. It is undisputed that the COBRA notification, sent eight days after Don's termination, was timely.

Rachel contends that Don never received the COBRA notice that Conexis mailed on August 22, 2012, or the subsequent COBRA notice that Conexis sent, at Aviall's request, on March 19, 2013. She also maintains that defendants never sent Don a bill for COBRA premiums, or a notice of lapsed coverage, and that "Don had told Ms. Lesko that Don had not received the election form sent by Conexis to his home address, so she used Don's email address. However, when she requested Conexis to send Don another election notice she failed to state that Conexis should send the form by email." P. 11/22/17 Br. 15 (citations omitted). But employers are not "required to ensure that plan participants actually receive [COBRA] notice"; they are merely obliged to act in good faith and to use means "reasonably calculated" to reach plan participants. *Degruise*, 279 F.3d at 336. Courts have held that the COBRA notice requirements are satisfied when the notification is sent via first class mail. *See, e.g., id.* at 337 ("'Good faith' can be demonstrated in a variety of ways with respect to COBRA's notification requirements. An employer can hand deliver a letter to an individual or, more commonly, send a letter via first class mail."); *see also Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 782 (S.D. Miss. 1992) (finding that employer acted in "good faith" by sending COBRA notification to individual via first class mail)*, aff'd sub nom. Lawrence v. Jackson Mack Sales*, 42 F.3d 642 (5th Cir. 1994).

Aviall and Conexis have adduced undisputed evidence that two COBRA notices were mailed to Don's residence address, which Don confirmed was correct when he spoke with Lesko on March 19, 2013. Accordingly, the court concludes that defendants are entitled to summary judgment as a matter of law on Rachel's ERISA claim. *See, e.g., Pinckney v. Fed. Reserve Bank of Dall.*, 2013 WL 5461873, at *15 (W.D. Tex. Sept. 30, 2013) ("Because the FRB has produced evidence that it timely sent Pinckney the appropriate notices via certified mail, it is entitled to judgment as a matter of law on this claim.").

VIII

Conexis moves for summary judgment on Rachel's breach of contact claims on the ground that Rachel cannot establish that any contract existed between Don and Conexis. It moves for summary judgment on Rachel's negligence and gross negligence claims on the ground that Rachel cannot establish that Conexis breached any duty owed to Don because "the competent evidence shows that Conexis did timely and properly notify Don . . . of his right to continue health care coverage under COBRA and that Conexis was not Don['s] employer or the plan administrator of Aviall's severance pay plan." Conexis 11/10/17 Br. 9-10. Rachel has not responded to any of these arguments.

Although the court is not permitted to enter a "default" summary judgment, the court is allowed to accept the evidence adduced by Conexis as undisputed. *See, e.g., Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Rule 56(e)(2), (3).

In her summary judgment response, Rachel has failed to create a genuine issue of fact on the question whether a contract existed between Conexis and Don or on the question whether Conexis breached a duty owed to Don. Accordingly, the court grants Conexis' motion for summary judgment on Rachel's claims for breach of contract, negligence, and gross negligence and enters a Rule 54(b) final judgment in its favor today.

## IX

On November 10, 2017 defendants moved to exclude the expert opinion of Dr. Needham, Rachel's expert, on the ground that his expert designation fails to meet the requirements of Rule 26(a)(2) and the court's scheduling order. In her December 21, 2017 response in opposition to the motion to strike, Rachel states that she "withdraws Plaintiff's expert designation of Dr. Allyn Needham." P. 12/21/17 Br. 5. Accordingly, in light of Rachel's withdrawal of her expert designation of Dr. Needham, the court denies as moot defendants' motion to exclude.

* * *

Accordingly, for the reasons explained, the court grants in part and denies in part Aviall's motion for summary judgment, grants in part and denies in part defendants' motion to strike summary judgment evidence and expert designations, grants Rachel's motion for leave to file supplemental response, grants Conexis' motion for summary judgment, and denies as moot defendants' motion to exclude expert opinion of Dr. Needham. The court dismisses the action against Conexis by Rule 54(b) final judgment filed today.

**SO ORDERED**.

March 22, 2018.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

Gina M. Lesko | Benefits Manager | Aviall Services, Inc.
2750 Regent Boulevard | Dallas, TX 75261
D: 972.586.1810 | BB: 214.934.9659 | F: 972.586.4101
www.aviall.com | gina.lesko@aviall.com

-------------------------------------------

This e-mail message, including attachments, may contain confidential, proprietary, or export controlled information.
Any unauthorized disclosure, distribution, or other use is prohibited, unless expressly authorized.
If you receive this e-mail in error, please notify the sender, and delete all copies of the original message from your systems.



2013 COBRA Election
Form_Thorson.doc



EXHIBIT
8
Lesko  5·18·17

PENGAD 800-631-6989